JUAN ROSARIO QUIÑONES, demandante y recurrente, *v.* MUNICIPIO DE PONCE, demandado y recurrido.

*Número:* R-65-42      *Resuelto:* 29 de junio de 1965

*Práxedes Álvarez Leandri,* abogado del recurrente; *Castro & Castro,* abogados del recurrido.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El Art. 96 de la Ley Municipal vigente (21 L.P.R.A. sec. 1603) dispone en lo pertinente:

"(a) Toda persona que tenga reclamaciones de cualquier clase contra una corporación municipal, por daños personales o a la propiedad, causados por culpa o negligencia de la corporación municipal, deberá presentar al jefe ejecutivo de ésta una notificación escrita, haciendo constar en forma clara y concisa la fecha, sitio, causa y naturaleza general del daño sufrido, la cuantía de la compensación monetaria o el tipo de remedio adecuado al daño sufrido, los nombres y direcciones de sus testigos y la dirección del reclamante así como el sitio donde recibió tratamiento médico en primera instancia.

(b) .    .    .    .    .    .    .    .

(c) .    .    .    .    .    .    .    .

(d)  .  .  .  .  .  .  .  .

(e) No podrá iniciarse acción judicial de clase alguna contra una corporación municipal por daños causados por culpa o negligencia de aquélla si no se hubiese efectuado la notificación escrita en la forma y manera y dentro de los plazos prescritos en este Subtítulo. Lo anterior es aplicable únicamente a los daños causados por cualquier corporación municipal con posterioridad a la vigencia de este Subtítulo.

(f)  .  .  .  .  .  .  .  .

(g)  .  .  .  .  .  .  .  ."

En 28 de mayo de 1963, el abogado señor P. Álvarez Leandri, en representación del señor Juan Rosario dirigió la siguiente notificación al Alcalde de Ponce:

"28 de mayo de 1963.—Hon. Juan Luis Boscio.—Municipio de Ponce, Puerto Rico.—Señor:—El Sr. Juan Rosario celebró un contrato de compraventa de un predio de terreno en el Cementerio Municipal de esta ciudad de Ponce, con fecha 6 de noviembre de 1959, en cuyo contrato aparece descrita detalladamente la parcela B adquirida por él, y el número oficial de recibo, o sea, el 2228, de fecha 23 de octubre de 1959. El día 15 de mayo del año en curso, cuando el Sr. Rosario fue a visitar la tumba donde se encontraba enterrada su esposa encontró enterrada a otra persona en la parcela de su propiedad, a pesar de estar la misma debidamente identificada con una cruz y la palabra 'propiedad'. No hay duda que ha habido una violación al contrato de compraventa y que el Sr. Rosario ha experimentado sufrimientos y ha sufrido daños y perjuicios que el Municipio de Ponce debe reparar e indemnizar por la profanación o remoción de los restos de la esposa del Sr. Rosario. Le suplico encarecidamente que inicie una investigación sobre estos hechos y que una vez convencido de los daños sufridos proceda extrajudicialmente ese municipio a pagar una suma razonable al Sr. Rosario por los daños y perjuicios sufridos. En espera de su contestación, quedo, Muy atentamente, Práxedes Álvarez Leandri. (f) P. Álvarez Leandry."

En abril de 1964, Juan Rosario Quiñones interpuso demanda contra el Municipio de Ponce reclamándole daños

sufridos como consecuencia de los hechos notificados a su Alcalde en la carta transcrita anteriormente. Al declararse con lugar una moción de desestimación presentada por el Municipio, el demandante radicó una demanda enmendada. Alegó en ella sustancialmente lo siguiente:

"2—Que el demandante adquirió del Municipio de Ponce, aquí demandado, con fecha 6 de noviembre de 1959, una parcela de terreno en el Cementerio Civil de Ponce, habiendo satisfecho el precio de la compraventa, según consta del recibo oficial número 228, de fecha 23 de octubre de 1959.

3—Que en el predio de terreno adquirido por el demandante al Municipio de Ponce, aquí demandado, se encontraba enterrado el cadáver de su esposa Mercedes Natal, estando identificada la tumba con una cruz de piedra y cemento, donde aparecía el nombre de la finada, con sus puntos definidos, indicativa de que en dicha parcela no se podía enterrar ninguna otra persona por ser propiedad del demandante.

4—Que con fecha 15 de mayo de 1963, el Municipio de Ponce, aquí demandado, a través de sus empleados en el Cementerio Civil, removieron los restos de la esposa del aquí demandante, profanando de esa manera la tumba, e inhumaron a otra persona en dicho predio de terreno propiedad del demandante."

Se alegó además el hecho del envío al Alcalde de Ponce de la comunicación de 28 de mayo de 1963, así como los daños sufridos por el demandante y su importe.

Contestó el Municipio de Ponce aceptando unos hechos y negando otros y como defensa especial alegó; "El demandante no cumplió a carta cabal con el contrato de compraventa de terrenos aludido en la demanda."

El día señalado para la vista del caso en su fondo y mientras se celebrada una conferencia con antelación al juicio, el abogado del Municipio planteó la defensa de que la demanda no aducía hechos que justificaran un remedio a favor del demandante. Fundó dicha defensa en la insuficiencia de la notificación cursada por el demandante al Municipio demandado. Las partes acordaron que el Tribunal resolviera previamente la cuestión de derecho así planteada y a esos

efectos ofrecieron la carta dirigida por el abogado del demandante al Alcalde de Ponce de fecha 28 de mayo de 1963 y copia de una carta de 5 de junio de 1963 dirigida por el abogado del Municipio de Ponce a la General Insurance Agency de Hato Rey, aseguradora de dicho municipio.

En 11 de febrero de 1965 el Tribunal de instancia resolvió que la notificación hecha al Alcalde de Ponce no cumplía sustancialmente con los requisitos exigidos por el Art. 96 de la Ley Municipal porque (1) no especificaba la cuantía de la compensación monetaria reclamada (2) no da el nombre y dirección de sus testigos o en su defecto no informa que no los hubiera y (3) no informa la dirección del reclamante." En su consecuencia declaró con lugar la moción para desestimar y dictó sentencia declarando sin lugar la demanda con las costas.

A solicitud del demandante expedimos un auto para revisar dicha sentencia. Debemos resolver (1) si es de aplicación el Art. 96 de la Ley Municipal a las acciones en reclamación de daños y perjuicios *ex contractu*, y (2) de resolverse en la afirmativa, si la notificación cursada al Alcalde de Ponce cumple sustancialmente con requisitos exigidos por el referido Art. 96.

■ La acción interpuesta por el demandante en este caso nace de los Arts. 1054 y 1060 del Código Civil (31 L.P.R.A. secs. 3018 y 3024).(¹) Si hubo un incumplimiento del contrato de compraventa celebrado entre el Municipio y el demandado, tal incumplimiento por parte del Municipio obliga a éste a responder de los daños y perjuicios causados. En

---

(¹) "Artículo 1054.—Quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren el tenor de aquéllos."

"Artículo 1060.—Los daños y perjuicios de que responde el deudor de buena fe son los previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento.

' ".        .        .        .        .        .        ."

*Camacho* v. *Iglesia Católica*, 72 D.P.R. 353 (1951), expresamos a la página 362: "Conforme dijimos en *Maldonado* v. *Municipio de Ponce*, 39 D.P.R. 247, 250, 'El fundamento de la acción fue la profanación por parte del demandado de la tumba previamente vendida y entregada a los demandantes. Cuando el municipio abrió el nicho y trasladó los restos de allí, no solamente cometía un acto dañoso (*tort*), sino que también quebrantaba el contrato de compraventa. La venta a Velázquez fue sólo un eslabón en la cadena de acontecimientos que conducen y explican el quebrantamiento del contrato anterior celebrado con los demandantes . . . .' Habiendo habido un incumplimiento del contrato la demandada, a tenor de lo preceptuado por los artículos 1054 y 1060 del Código Civil, supra, viene obligada a responder de daños y perjuicios, una vez probados éstos."

■ Se trata pues de una reclamación de daños y perjuicios *ex contractu*. ¿Exige la Ley Municipal vigente que para el ejercicio de una acción de esta naturaleza contra un municipio, se dé cumplimiento previo a la notificación especificada en su Art. 96? Nos parece que ni del lenguaje usado en ese artículo ni de su historial legislativo se deduce que esa hubiera sido la intención del legislador. Por el contrario hay indicaciones convincentes de que las disposiciones del Art. 96 se incorporaron a la Ley Municipal para aplicarse a aquellas reclamaciones de daños y perjuicios *ex delictu* que nacen de los Arts. 1802 y 1803 del Código Civil (31 L.P.R.A. secs. 5141 y 5142).

Conforme dispone el inciso (a) del Art. 96, la notificación previa al jefe ejecutivo se le exige a toda persona que tenga reclamaciones de cualquier clase contra una corporación municipal, "por daños personales o a la propiedad, causados por culpa o negligencia de la corporación municipal". Entre los requisitos que debe cumplir la notificación escrita está el del sitio donde el reclamante recibió tratamiento médico en primera instancia. En el inciso (e) de dicho artículo que

prohibe el inicio de acción judicial de clase alguna contra las corporaciones municipales si no se efectúa la notificación escrita dentro del tiempo y la forma especificados, se repite el concepto de acciones "por daños causados por la culpa o negligencia de aquélla" (refiriéndose a la corporación municipal).

Se verá que el lenguaje usado en este artículo en tanto trata de significar las acciones judiciales a que el mismo se refiere, es parecido al del Art. 1802 del Código Civil, el que como es sabido, dispone que el que por acción u *omisión* cause daño a otro, "interviniendo culpa o negligencia, está obligado a reparar el daño causado". Ya hemos dicho que este artículo del Código Civil es la fuente de las acciones de daños y perjuicios por culpa o negligencia. *Rivera* v. *Rossi*, 64 D.P.R. 718 (1945).

Cuando se discutía en la Cámara de Representantes el proyecto que se convirtió en la Ley Municipal, el Representante Sr. Rodolfo Aponte propuso como enmienda que se incorporara a dicho proyecto, bajo el artículo que correspondiera, y que resultó ser el 96, las disposiciones del P. de la C. Núm. 163, del cual era autor. Al solicitarse de dicho Representante que diera una explicación del alcance de su enmienda, se expresó así:

"Sr. Aponte: Con mucho gusto. Uno de los problemas más graves con los que se confrontan los municipios de Puerto Rico, particularmente los municipios grandes y el Gobierno Estatal también, es la radicación de pleitos por daños y perjuicios, *cuando está próximo a expirar el año que la ley concede para la radicación de tal pleito.* No hablemos en este momento, porque es más grave aún cuando se trata de menores, porque la ley reconoce al menor su causa de acción hasta un año después de haber llegado a la mayoridad. Ya eso es un caso especial, pero continuamente los municipios de Puerto Rico—puedo dar fe de eso a base de mi propia experiencia como abogado de la Capital durante un número de años—continuamente los municipios se confrontan con pleitos en donde un ciudadano radica una acción reclamando

un número de miles de dólares a base de que se cayó en una acera una noche obscura a las 2 de la mañana, o a la hora que fuere, en una calle se cayó. Negligencia del municipio de mantener un roto en una acera, un boquete o una calle en mal estado, o una calle que se estaba arreglando y le quitaron el farol y el ciudadano se cayó. Muchas veces estas reclamaciones se pueden constatar claramente; aparecen los récords en el propio hospital del municipio, a veces. A veces aparece el parte policíaco que corrobora lo que dice ese ciudadano; *pero a veces también, los daños se reclaman en el día número 364 de haber ocurrido, el día antes de prescribir* el municipio se confronta con una demanda por $10,000 por la rotura de un tobillo o la herida en la cabeza, de una caída, o lo que sea. Se va a buscar testigos, no hay. El municipio no cuenta con testigos para determinar si es cierto o no es cierto que eso ocurrió. Se va a la policía a buscar el parte policíaco, no existe. Se va al hospital, no existe. Sin embargo, se confronta en corte con la declaración de un ciudadano cuya veracidad no se puede ni afirmar ni negar. Y hasta testigos, personas que a lo mejor salieron juntos de un cine, salieron juntos de una fiesta, quizás, juntos iban y uno se dislocó un tobillo en un hueco de una acera, pero no se dió parte a nadie. Y en muchas ocasiones quién sabe si hasta opera el elemento malicia de no radicar este caso hasta que haya pasado suficiente tiempo, cuando ya las huellas de la investigación no puedan ser recobradas. Yo sé, por experiencia propia, que yo he tenido que transigir, recomendar a la Junta de Comisionados la transacción de pleitos porque no se puede desmentir en forma alguna la declaración jurada de un demandante, un galeno, que reclama haber resbalado en una acera cubierta de limo un número de meses atrás y no hay manera de encontrar testimonios que afirmen ni que nieguen eso. Si los informes fuesen hechos a la autoridad municipal con suficiente prisa, con suficiente premura, le permitiría a las autoridades municipales investigar y constatar la certidumbre del hecho y la extensión de los daños. Este proyecto de enmienda que yo he formulado tiene como propósito establecer como requisito sine qua non para la radicación de un pleito de daños y perjuicios contra una corporación municipal, que se notifique en una forma fehaciente al municipio el hecho de que tal daño ocurrió, con una serie de circunstancias que se expresan en el estatuto, de suerte que la corporación municipal diligentemente pueda verificar y constatar la corrección, la

certidumbre de tal hecho y poder defenderse si es que eso es falso, o allanarse si es que es cierto." (Subrayado nuestro.) (*Diario de Sesiones de la Asamblea Legislativa de Puerto Rico, Sesión Ordinaria*, 1958, Vol. 10, Parte III, pág. 1595.)

■ Es evidente que por los ejemplos que expuso el Representante en la explicación del alcance de la enmienda así como la repetida referencia que hizo al término de prescripción de un año de las acciones, se estaba refiriendo exclusivamente a las acciones por daños y perjuicios que nacen del Art. 1802 del Código Civil y que esas eran las acciones para cuyo ejercicio ante los tribunales se requería la notificación escrita al jefe ejecutivo. Estas acciones por daños personales o a la propiedad causadas por culpa o negligencia del municipio son las que prescriben al año. Las acciones por daños causados por el quebrantamiento o incumplimiento de un contrato, prescriben a los 15 años. *Segarra* v. *Vivaldi*, 55 D.P.R. 160 (1939). Resulta bastante evidente la intención legislativa en cuanto a que el requisito de notificación se establecía para las acciones de daños y perjuicios que prescriben al año y no a otras, y que como antes hemos dicho, son las causadas por culpa o negligencia conforme dispone el Art. 1802 del Código Civil.

En *Mangual* v. *Tribunal Superior*, 88 D.P.R. 491 (1963), dijimos, que "aparentemente el Art. 96 fue tomado en gran parte de la Sec. 50-e de la Ley Municipal General de Nueva York, McKinney's *Consolidated Laws of New York*, libro 23, págs. 85–86, . . . ." Aparentemente también el inciso (a) del Art. 96 fue tomado en parte de la Sec. 50-i del estatuto de Nueva York, el cual dispone en lo pertinente:

"§ 50-i. Radicación de reclamaciones por actos torticeros: Inicio de las acciones.

"1. No se tramitará o mantendrá acción o procedimiento especial alguno contra una ciudad, condado, pueblo, aldea, o distrito del servicio de bomberos o distrito escolar por lesiones personales o daños a la propiedad mueble o inmueble sufridos a causa de la culpa o negligencia de tal ciudad, condado, pueblo,

aldea, o distrito del servicio de bomberos o distrito escolar o de cualquier funcionario, agente o empleado del mismo, incluyendo bomberos voluntarios de tal ciudad, condado, pueblo, aldea, o distrito del servicio de bomberos o distrito escolar, o de cualquier bombero voluntario cuyos servicios hayan sido aceptados a tenor con las disposiciones del art. 209-i de este capítulo, a menos que, (a) se haya servido un aviso de reclamación a la ciudad, condado, pueblo, aldea, distrito del servicio de bomberos o distrito escolar de conformidad con el art. 50-e de este capítulo, (b) . . . ."

De suerte que en Nueva York el ejercicio de las acciones de daños personales o a la propiedad por culpa o negligencia de la corporación municipal está sujeta entre otros requisitos, a la previa notificación que exige la Sec. 50 (e) del estatuto que como ya hemos visto se refiere a las acciones que nacen de actos torticeros (torts). Se ha resuelto que la Sec. 50 (e) de la Ley Municipal General de Nueva York, no se aplica a acciones que no surgen de un acto que no sea torticero (tort), 40 New York Jurisprudence, Sec. 1065, pág. 320.

■ El mero hecho de que en el quebrantamiento del contrato medie acción torticera de la corporación municipal no convierte la acción del reclamante de daños y perjuicios, en una acción torticera y por ende sujeta a la notificación previa exigida por la Ley Municipal. (²)

En otras jurisdicciones americanas, se ha decidido también, interpretando un lenguaje similar al de nuestro estatuto, que en las acciones en reclamacion de daños y perjuicios por la culpa o negligencia de la corporación municipal, el requisito de la notificación previa, no se aplica a las acciones fundadas en la violación de un contrato. Lund v. Village of Princeton, 85 N.W.2d 197; McQuillen, Municipal Corporations, Vol. 18, sec. 53-155, pág. 563; 2 Antieau, Municipal Corporation Law, sec. 11.17, pág. 83.

No viniendo obligado el demandante en este caso, a presentar la notificación escrita al jefe ejecutivo del Municipio

---

(²)Holbrook v. City of Saratoga, 58 So.2d 862.

de Ponce, que exige el apartado (a) del Art. 96 de la Ley Municipal por tratarse de una acción en reclamación de daños y perjuicios por la violación de un contrato, es innecesario resolver si la notificación cursada por el abogado del demandante a dicho jefe ejecutivo cumple sustancialmente con los requisitos exigidos por el estatuto.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de Ponce, en 11 de febrero de 1965, y se devolverá el caso para ulteriores procedimientos.*